RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0124p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EXPORT-IMPORT BANK OF THE UNITED
STATES,

               *Plaintiff-Appellee,*

    *v.*

ADVANCED POLYMER SCIENCES, INC.,

               *Defendant,*

DONALD and ARLENE KEEHAN,

               *Defendants-Appellants.*

No. 09-3414

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-01138—Christopher A. Boyko, District Judge.

Argued: April 21, 2010

Decided and Filed: May 5, 2010

Before: MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Nicholas Aristides Panagopoulos II, LAW OFFICE, Cleveland Heights, Ohio, for Appellants. Alexander A. Rokakis, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jon P. Yormick, YORMICK & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellants. Alexander A. Rokakis, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

———————————

**OPINION**

———————————

    BOYCE F. MARTIN, JR., Circuit Judge. Export-Import Bank (Ex-Im Bank), an agency of the United States, was the holder of a promissory note by Advanced Polymer Sciences, Inc. (APS) and of guaranties by Donald Keehan and Arlene Keehan guaranteeing

1

the entirety of the APS obligation. Ex-Im Bank obtained the note and the guarantees by assignment from Bank One, N.A., which had originally extended credit to APS. Both the note and the guarantees contained cognovit provisions, allowing the beneficiary to confess judgment against the obligor in the event of default. APS defaulted on the debt while the note and the guarantees were in the hands of Bank One. Several years later, Ex-Im Bank, as Bank One's assignee, confessed judgment in the principle amount of $2,166,661.10 against APS and the Keehans. The Keehans moved to set aside the judgments in the district court, alleging as meritorious the defenses of laches, *res judicata*, and that the guarantees were unenforceable due to a fatal conflict among contractual terms. The district court declined to set aside the judgments. *Export-Import Bank of the U.S. v. Advanced Polymer Scis., Inc.*, 624 F. Supp. 2d 696 (N.D. Ohio 2009). The Keehans now appeal, asserting that the applicable statute of limitations had run before Ex-Im Bank obtained the judgments and that an arbitration provision in the documents conflicts with the cognovit provision. We **AFFIRM**.

## I.

In the late nineteen-nineties, APS took out a series of loans from Bank One. These loans were typically documented by promissory notes from APS. In August of 1998, the Keehans executed a blanket commercial guarantee in which they each personally guaranteed all debts from APS to Bank One. There are several important provisions in the guarantees. First, the guarantees contain a confession of judgment, that the parties refer to as "cognovit," provision:

> Guarantor hereby irrevocably authorizes and empowers any attorney-at-law
> to appear in any court of record and to confess judgment against Guarantor
> for the unpaid amount of this Guaranty, plus attorneys' fees as provided in
> this Guaranty, plus costs of suit, and to release all errors, and waive all rights
> of appeal.

(Guaranty at 2.) Second, the guarantees contain an arbitration provision:

> Lender and Guarantor agree that upon the written demand of either party,
> whether made before or after the institution of any legal proceedings, but
> prior to the rendering of any judgment in that proceeding, all disputes,
> claims and controversies between them, whether individual, joint, or class

in nature, arising from this Guaranty, any Related Document or otherwise, including without limitation contract disputes and tort claims, shall be arbitrated pursuant to the Commercial Rules of the American Arbitration Association.

(*Id.*)  Third, the guarantees contain a broad waiver of defenses:

Guarantor also waives any and all rights or defenses arising by reason of . . . (d) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness.

(*Id.*)  Finally, the guarantees provide that they are governed by Ohio law.  (*Id.*)

One of the loans from Bank One was an export line of credit to APS, which was originally extended in 1999 in the amount of $1,300,000.  Ex-Im Bank guaranteed the line of credit, presumably as part of a federal trade program.  In June of 2000, the line of credit was increased to $2,050,000 and, by its terms, became due and payable on November 16, 2000.  APS failed to make payment in full on the line of credit and several other obligations to Bank One, and the Keehans did not step in to pay the debt on APS's behalf.

On March 7, 2001, counsel for Bank One sent a letter to Donald Keehan declaring APS in default of all of its obligations to Bank One and demanding payment from APS and the Keehans.  When APS and the Keehans failed to make payment, Bank One confessed judgment against APS and the Keehans in Ohio state court on November 26, 2002 on all of the APS obligations except for the line of credit.

The line of credit was excluded from Bank One's confession of judgment because it was guaranteed by Ex-Im Bank.  So, instead of confessing judgment against APS on the line of credit note and against the Keehans on the guarantees, Bank One made demand on the Ex-Im Bank guaranty on October 30, 2002 in the amount of $1,302,448.99.  Once Ex-Im Bank made good on its guaranty to Bank One, Bank One transferred its interest in the line of credit note and the guarantees to Ex-Im Bank by assignment dated January 23, 2003.

Ex-Im Bank did not immediately pursue its claim against APS and the Keehans, either formally or informally.  Instead, Ex-Im Bank, by the United States Attorney for the Northern District of Ohio, filed suit as assignee of the cognovit note and guarantees in the United States District Court for the Northern District of Ohio on April 18, 2007.  The record

does not reveal what occurred, if anything, between Ex-Im Bank and the Keehans in the period between the January 2003 assignment and the April 2007 confession of judgment.

The district court entered judgment on May 23, 2007 against APS and the Keehans, jointly and severally, in the principal amount of $2,166,661.10, plus interest and the costs of suit. After obtaining the judgment, the government began negotiating with the Keehans. When the negotiations proved unsuccessful, the Keehans[1] moved on March 4, 2008 to vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b).

As the basis for their Rule 60(b) motion, the Keehans asserted three purportedly meritorious defenses to the confessed judgments. First, they argued that, because Bank One could have sued on the line of credit when it sued on all of APS's other obligations, the doctrine of *res judicata* barred Ex-Im Bank, as Bank One's assignee, from suing later on the line of credit. Second, they argued that the arbitration provision in the guarantees conflicted with the confession of judgment provision and, because contracts are construed against the drafter and because federal law favors arbitration, the confession of judgment provision must give way to the arbitration provision, rendering the cognovit judgments invalid. Third, they argued that the government's failure to act in the more than four years that elapsed between the assignment of the guarantees and filing suit on the guarantees gave rise to the defense of laches. Notably, in addressing the laches argument, neither party discussed the applicable or most analogous statute of limitations.

The district court denied the Rule 60(b) motion in an opinion and order dated March 11, 2009. 624 F. Supp. 2d 696. The court focused on the requirement of a meritorious defense in seeking to vacate a judgment under Rule 60(b). As relevant to this appeal the court first found that, as a matter of Ohio law, *res judicata* and laches are not meritorious defenses to cognovit judgments. It found that, under Ohio law on confessed judgments:

---

[1]Only the Keehans sought to vacate the judgment as, by that point, APS had ceased to do business and had no assets.

> For purposes of a Rule 60(b) motion "a meritorious defense is one that goes to the integrity and validity of the creation of the debt or note, the state of the underlying debt at the time of confession of judgment, or the procedure utilized in the confession of judgment on the note. A judgment on a cognovit note will generally not be vacated for reasons which do not encompass such matters of integrity and validity."

*Id.* at 701 (quoting *First Nat'l Bank of Pandora v. Freed*, No. 5-03-36, 2004 Ohio App. LEXIS 3209, at *7-8 (Ohio Ct. App. July 6, 2004)). From this, the court reasoned that laches and *res judicata* do not fit within the narrow class of defenses to confessed judgments, as neither defense affects the validity of the underlying debt, the validity of the agreement at issue, or the procedures used to confess judgment. *Id.*

The court then proceeded to address the merits of the laches argument and found them lacking. Among other reasons for this finding was that the Keehans could not show that Ex-Im Bank lacked diligence in waiting several years to confess judgment. In so doing, the court looked to the applicable statute of limitations as a guidepost in determining whether Ex-Im Bank had acted in a timely fashion. Importantly, the court found that Ohio's fifteen-year limitation period for actions on written contracts, O.R.C. § 2305.06, was the applicable limitations period. With that in mind, the court found that Ex-Im Bank's approximately four-year delay in confessing judgment did not rise to the level of lack of diligence necessary to support a laches defense. 624 F. Supp. 2d at 706.

Finally, the district court found that the Keehans' argument regarding the supposed inherent conflict between the arbitration provision and the cognovit provision could be a meritorious defense to a cognovit judgment, as it went to the validity and integrity of the cognovit provisions themselves. The court acknowledged that the cognovit provision rendered the arbitration provision less useful because Ex-Im Bank could obtain judgment, and thus cut off the right to arbitration, without the Keehans ever knowing about it. However, the court found that just because the arbitration provision was less useful in this case did not mean it was rendered useless by the cognovit provision in all cases. The Keehans theoretically could have demanded arbitration before Ex-Im Bank confessed judgment. The court concluded that, even if the facts of

this case did not lend themselves to that result, this was no reason for finding the two provisions inherently in conflict as a matter of contract interpretation.  *Id.* at 707-08.  Thus, having rejected all of the Keehans's supposedly meritorious defenses, the court denied their motion to vacate the judgment.  The Keehans timely appealed.

## II.

### A.      **Standard of Review**

The district court found, and the Keehans do not dispute, that they bring their motion to vacate the judgment under Federal Rule of Civil Procedure 60(b)(6).  Under this Rule, a court may vacate a judgment for "any other reason that justifies relief."  FED. R. CIV. P. 60(b)(6).  This Court has stated that Rule 60(b)(6) provides relief "only in exceptional and extraordinary circumstances," which are defined as those "unusual and extreme situations where principles of equity mandate relief." *Jinks v. AlliedSignal, Inc.*, 250 F.3d 381, 387 (6th Cir. 2001) (citations and emphases omitted).  In addition to the requirement of exceptional circumstances, a Rule 60(b)(6) movant must also satisfy the three equitable factors required for Rule 55 relief:  (1) lack of prejudice to the plaintiff; (2) a meritorious defense; and (3) whether the defendant's culpable conduct led to the judgment. *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433 (6th Cir. 1996).  We review a district court's denial of a Rule 60(b) motion for abuse of discretion. *Jinks*, 250 F.3d at 385.

In this case, the district court focused solely on whether the Keehans satisfied the requirement of asserting a meritorious defense, and the parties do the same.  We follow suit.

### B.      **Statute of Limitations**

On appeal, the Keehans argue that Ex-Im Bank's suit to confess judgment on the guarantees was barred by 28 U.S.C. § 2415(a)'s six-year limitations period for actions

by the United States based on a contract.**2**  Ex-Im Bank responds that the Keehans have

waived the statute of limitations defense on appeal because they did not argue the issue

below.  Instead, they argued laches, and it was the district court itself that first discussed

the applicable statute of limitations.

It is true that the Keehans did not assert the statute of limitations as a meritorious

defense in the district court—indeed, they never took any position on the applicable

limitations period.  Normally, we deem issues not raised below to be waived for

purposes of appeal, but we have "deviated from the general rule in exceptional cases or

particular circumstances or when the rule would produce a plain miscarriage of justice."

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (internal quotation

marks and citation omitted).  Whether to so deviate is based on several factors, such as

"whether the issue newly raised on appeal is a question of law, or whether it requires or

necessitates a determination of facts," and "whether failure to take up the issue for the

first time on appeal will result in a miscarriage of justice or a denial of substantial

justice."  *Id.* (citations omitted).

In this case, the applicable statute of limitations is a question of law requiring no

further factual development, which cuts in favor of looking past the failure to raise the

issue below.  However, we do not believe that a refusal to address the statute of

limitations defense would work a substantial miscarriage of justice on the Keehans.  The

statute of limitations is merely an affirmative defense, which may be waived at the outset

of litigation by a party's failure to assert it.  FED. R. CIV. P. 8(c); *Phelps v. McClellan*,

---

**2**Though we affirm the district court's decision, we pause to note that, in considering the Keehans' laches argument, the district court incorrectly determined that Ohio's fifteen-year statute of limitations for actions on a written contract applied.  Instead, as both parties now agree, the proper limitations period is the six-year statute of limitations applicable to actions on a contract brought by the United States or one of its agencies, 28 U.S.C. § 2415(a), because Ex-Im Bank is an agency of the United States.  Where the parties disagree is over the date on which the six-year period began to run:  either the date on which APS defaulted on the debt while it was still in the hands of Bank One or the date on which Ex-Im Bank obtained the debt by assignment from Bank One.  We have never addressed when section 2415's clock begins to run on a claim brought by the United States based on a contract to which the United States was not originally a party, and there appears to be a split among the authorities to have answered the question.  *See SMS Fin., LLC v. ABCO Homes, Inc.*, 167 F.3d 235, 241 n.20 (5th Cir. 1999) (noting split among authorities and detailing varying positions).  However, because we ultimately find the statute of limitations defense to have been waived, we leave for another day the question of section 2415's accrual date in a claim obtained by assignment.

30 F.3d 658, 663 (6th Cir. 1994). As failure to assert the limitations period at the outset of litigation results in a waiver as a matter of course, we cannot say that finding the defense waived at this later stage of the proceedings due to the Keehans' failure to timely assert the defense to be so draconian as to result in a substantial miscarriage of justice. We therefore deem the issue waived. *E.g. Brunet v. City of Columbus*, 1 F.3d 390, 402-03 (6th Cir. 1993) (finding that statute of limitations defense was waived when raised for first time on appeal).

**C.          Interpretation of the Guarantees**

As an alternative to the statute of limitations argument, the Keehans argue that the confession of judgment provision in the guarantees conflicts with the arbitration provision and, thus, the confession of judgment provision is void. As the district court correctly noted, this argument could constitute a meritorious defense under Ohio law because it goes to the validity of the instrument creating the underlying debt. However, we agree with the district court that the argument does not actually constitute a meritorious defense[3] because the Keehans are simply incorrect in their premise that the two provisions inherently conflict.

Ohio law instructs courts to "attempt to reconcile inconsistent contract terms and give effect to each term." *In re Graham Square, Inc.*, 126 F.3d 823, 830 (6th Cir. 1997). This means that the law recognizes that, in certain circumstances, provisions in a contract will seem to contradict. But courts must seek to find a construction that would give effect to each term, and only if such a construction is impossible will the contract be deemed unenforceable.

---

[3]The Keehans take issue with the district court's decision to address the merits of the contractual conflict argument in denying the motion to vacate. According to the Keehans, once the district court concluded that the argument could constitute a meritorious defense, the district court should have vacated the confessed judgment and addressed the merits of the contractual conflict argument at a later date. (Appellant's Br. at 28 (citing *Nat'l City Bank v. Rini*, 834 N.E.2d 836 (Ohio Ct. App. 2005) for the proposition that "in light of a proper allegation of a meritorious defense, any doubt should be resolved in favor of setting aside the judgment so that the case may be decided on the merits.").) We disagree. Interpretation of a contract is a question of law, *Taylor Building Corp. of America v. Benfield*, 884 N.E.2d 12, 21 (Ohio 2008), so the district court already had all it needed to determine the merits of the argument. Having found as a matter of law that the two provisions did not conflict, there was no residual doubt that would cut in favor of further development of the merits.

The arbitration provision in the guarantees provides that either party may demand arbitration until entry of a judgment.  The Keehans complain that this right to demand arbitration is functionally worthless because the beneficiary of the guaranty could confess judgment, and thus extinguish the right to compel arbitration, without the guarantor knowing of it.  The Keehans are correct that this is a possible scenario, and indeed it appears to be what happened in this case.  However, it is easy to imagine several different fact patterns in which the arbitration provision could perform its intended function.  For instance, the beneficiary of the guaranty could demand or try to negotiate voluntary payment prior to confessing judgment and proceeding with collection efforts, in which case the guarantor could demand arbitration to dispute the validity or amount of the debt.  Or, the beneficiary of the guaranty could elect to compel arbitration rather than confess judgment and then have to litigate the motions to vacate the judgment that seem inevitably to follow confessed judgments, as Ex-Im Bank has had to litigate the Keehans' motion here.  Furthermore, the arbitration clause covered all disputes, including those that do not involve non-payment.  Accordingly, the arbitration provision does not facially conflict with the confession of judgment provision, so the guarantees are not fatally ambiguous.

## CONCLUSION

For the reasons set forth above, we **AFFIRM**.