NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0161n.06

No. 13-2731

FILED
Mar 02, 2015
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| V CARS, LLC, a Delaware limited liability company, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| CHERY AUTOMOBILE CO., LTD., a corporation organized under the laws of the People's Republic of China; YIN TONGYAO, an individual Chinese national; and KAN LEI, an individual German citizen, residing in China. | ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) ) ) | |

BEFORE:     DAUGHTREY, ROGERS, and DONALD, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.  Plaintiff V Cars, LLC, appeals the district court judgment denying its motion for leave to file a second amended complaint in the plaintiff's suit against defendants Chery Automobile Company, Ltd., Yin Tongyao, and Kan Lei. Because well-established *res judicata* principles ensure that the proposed complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, an amendment of the plaintiff's complaint would be futile, as the district court correctly determined. We therefore affirm.

This appeal has its genesis in a 2008 complaint filled with allegations of corporate espionage and international intrigue. According to V Cars (formerly known as Visionary Vehicles, LLC), the Chinese company and the officials named as defendants routinely bribed or otherwise illicitly influenced employees of American car companies in order to obtain plans and other proprietary information about vehicles that then could be produced in China and sold to consumers in the West. The alleged harm to companies like V Cars was not insubstantial; in fact, the plaintiff claims that had Chery not backed out of a joint venture with V Cars after it improperly gained information about other potential joint partners from a V Cars employee, V Cars stood to make "in excess of $14 billion on that deal."

Frustrated by the perceived undermining of its lucrative business association, V Cars filed a 72-page, 18-count complaint alleging, in pertinent part, that Chery, Yin, and Kan conspired with a former V Cars employee in such a manner as to violate subsections (c) and (d) of 18 U.S.C. § 1962, part of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968. Approximately one year later, the plaintiff filed its first amended complaint, which again alleged RICO violations in two of the 15 counts of that pleading. Rather than proceeding to trial, however, Chery moved the district court to stay the federal court proceedings and to compel the parties to arbitrate their dispute. In support of that motion, Chery highlighted provisions of two agreements it had entered into with V Cars. In the agreements, the parties clearly specified that any disputes between them were "to be arbitrated in English at the Hong Kong International Arbitration Centre in accordance with the International Chamber of Commerce Rules," and that if any disagreements could not be resolved "through friendly consultations" within 60 days, "arbitration shall be conducted according to the Hong Kong

International Arbitration Centre ("HKIAC") in accordance with the International Chamber of Commerce Arbitration Rules ("ICC Rules")" in Hong Kong.

In February 2010, the district court granted the motion, leading to a lengthy, thorough arbitration proceeding in Hong Kong. Oral hearings before the arbitral tribunal commenced on November 7, 2011, and continued through November 26 of that year. Then, with the conclusion of the oral proceedings, came various post-hearing submissions, the proffering of expert opinions, requests for costs, and the filing of summaries of alleged damages. Finally, the tribunal declared the proceedings closed on November 8, 2012, a full year after the commencement of the arbitration process and almost three years from the date of the district court's order compelling the adjudication. The arbitral tribunal released its extensive, written final award on November 19, 2012.

The tribunal dedicated 11 of the 124 pages of the award decision to a discussion of the plaintiff's RICO claims, concluding that, to be subject to RICO, an enterprise "must be a domestic rather than foreign enterprise." Applying the so-called "nerve center test,"[1] the tribunal then recognized that the members of the enterprise at issue in this case often met in the United States and otherwise "communicated via a US-based server owned by Yahoo.com and by telephone." Nevertheless, as even V Cars itself conceded in its post-hearing submissions, "Chery . . . directed and conducted the affairs of the Chery enterprise," and "'Chery management' controlled the alleged 'enterprise.'" Consequently, the tribunal determined "that if the alleged '*Chery Enterprise*' existed, the true '*brains*' and '*nerve center*' of the enterprise

---

[1] As explained in *Royal Indemnity Co. v. Wyckoff Heights Hospital*, 953 F. Supp. 460, 462-63 (E.D.N.Y. 1996) (internal quotation marks and citations omitted):

> The nerve center test looks to those factors that identify the place where overall corporate policy originates or the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objectives.

resided not in the US but in China." Thus, because the enterprise that formed the basis of the RICO allegations was a Chinese enterprise and not an United States enterprise, application of the RICO Act to the claims asserted by V Cars "would involve an impermissible extraterritorial application of the statute. Accordingly, [the RICO] claims are dismissed." Despite dismissing the plaintiff's claims in the arbitration proceeding, the tribunal stated that its decision with respect to the RICO claims "is not intended to foreclose any statutory rights that the Claimant may have to pursue a remedy under the RICO statute in a court of law." Indeed, in announcing its official decision and award, the tribunal reiterated specifically that the RICO claims advanced by V Cars "are dismissed without prejudice to any statutory rights that the Claimant may have to pursue a remedy under the RICO statute in a court of law."

Seizing upon the award language dismissing the RICO causes of action *without prejudice* and the tribunal's statement that its arbitration decision was not intended to foreclose any rights under the RICO statute that V Cars might be able to bring, V Cars returned to federal district court and moved for leave to file a second amended complaint against the defendants. After hearing arguments, the district court denied the motion, holding that any RICO claims that V Cars sought to pursue were precluded by the arbitration panel's decision and, as a result, that any further attempt to impose RICO liability on the defendants would be futile. From that decision, V Cars now appeals to this court.

Ordinarily, when reviewing a district court's decision to deny a motion to amend a pleading, we apply a deferential abuse-of-discretion standard. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 743 (6th Cir. 2002). However, "[i]f the denial of the motion to amend is based on it being futile, or solely on the legal conclusion that the amended pleading would not withstand a motion to dismiss, then it is reviewed *de novo*." *Id.*

In denying the plaintiff's motion to file a second amended complaint, the district court determined that principles of *res judicata* precluded V Cars from seeking to relitigate RICO claims that the court viewed as having been dismissed by the arbitral tribunal. In *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008), we listed the four elements of claim preclusion:

> [A] claim is barred by the res judicata effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

(Internal quotation marks and citations omitted.) We conclude that the arbitration proceedings in Hong Kong were sufficient to serve as a basis for the district court's holding that each of the four claim-preclusion elements was met in this matter.

V Cars does not dispute that the subsequent action in federal district court was between the same parties as the arbitration proceeding (element 2), and that there is an identity of the causes of action in the two matters (element 4). Furthermore, the claims that V Cars sought to raise in its second amended complaint were, or should have been, litigated in the Hong Kong arbitration (element 3). Although the plaintiff claimed, both in open court and in its brief in support it's motion to file a second amended complaint, that it had discovered new facts "during discovery in the Hong Kong arbitration" "regarding Defendants' predicate acts of mail and wire fraud," those "facts" could not alter the arbitrators' decision because, new or not, those facts still related to an extraterritorial enterprise not subject to liability under the RICO statute. Thus, any new information upon which V Cars relied in seeking to amend its pleadings was intimately connected with the very claims that had been before the tribunal.

Hence, if the plaintiff is to avoid application of *res judicata* principles at this stage of the litigation, it must establish either that the arbitral tribunal was not a "court of competent jurisdiction" or that the tribunal did not reach a final decision on the merits of the RICO claims. Both of these avenues of attack fail.

First, the tribunal clearly had jurisdiction to resolve the claims before it. It is no longer debatable that there exists a clear "federal policy favoring arbitration," "requiring that 'we rigorously enforce agreements to arbitrate.'" *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Moreover, nothing in the RICO statute itself is "intended to prevent enforcement of agreements to arbitrate RICO claims," *Shearson/Am. Express*, 482 U.S. at 242, and "significant precedent hold[s] that an arbitrator's decision has preclusive effect in federal court." *Schreiber v. Philips Display Components Co.*, 580 F.3d 355, 367 (6th Cir. 2009). There is, therefore, no impediment under United States law to vesting the arbitral tribunal with the authority to resolve the RICO causes of action. Furthermore, the tribunal determined that it had jurisdiction over the RICO claims. Indeed, the tribunal noted "that there is no dispute between the Parties that the Tribunal has jurisdiction in respect of these claims." Counsel for V Cars even conceded during the arbitration proceedings that it understood "that [the] tribunal took the entire case. So the RICO case is before this tribunal. *If this tribunal considers the RICO provision and addresses it and adjudicates it, that would be, I admit, res judicata versus us going back to Detroit and suing Chery for RICO again*."

In light of that concession, and the applicable law supporting it, this appeal by V Cars necessarily rises or falls on the plaintiff's contention that the arbitral tribunal did not reach a

decision on the merits of the RICO claims. That argument is premised upon the plaintiff's insistence that the following language of the final award constitutes either a recognition by the tribunal that it lacked jurisdiction to decide the RICO issues before it, or that the tribunal simply deferred resolution of those claims in favor of a judicial determination: "the [RICO claims] are dismissed without prejudice to any statutory rights that the Claimant may have to pursue a remedy under the RICO statute in a court of law."

But as we have just noted—and contrary to the plaintiff's assertion—the tribunal clearly recognized its jurisdiction over the RICO claims. Nor did the arbitrators defer a ruling on the merits of those claims. The tribunal's rejection of the plaintiff's RICO claims was based entirely on the arbitrators' determination that the RICO enterprise identified by V Cars was Chinese, not American, and that the RICO statute does not have extraterritorial reach. In fact, there exists "a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (internal quotation marks and citations omitted). Furthermore, as was made clear in *Morrison*, when considering what conduct a statute *reaches*, the court or tribunal examining the issue also is deciding what conduct the statute *prohibits*, "which is a merits question." *Id.* at 254. The tribunal's ruling on the RICO claims in this case, therefore, did not rest upon jurisdictional grounds. Indeed, the Supreme Court has sought to educate the bench and bar on the difference between jurisdictional bases for dismissal and dismissals based upon the failure of a party to state a claim with sufficient particularity or support. As the Court explained in *Arbaugh v. Y&H Corp.*:

> If the Legislature clearly states that a threshold limitation on a statute's scope
> shall count as jurisdictional, then courts and litigants will be duly instructed and
> will not be left to wrestle with the issue. But when Congress does not rank a

statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

546 U.S. 500, 515-16 (2006) (footnote and citation omitted.) With no limitation on the jurisdiction of the deciding body listed in the RICO statute, the tribunal's determination here must be considered a merits determination and not a jurisdictional ruling.

Finally, even though the Supreme Court has stated that dismissals based upon a denial of recognition of the extraterritorial reach of statutes are indeed merits determinations, V Cars continues to insist that the decision in its arbitration proceeding cannot be considered a ruling on the merits of the RICO claims. The plaintiff bases its argument on the fact that the tribunal, in announcing its final award, stated that the RICO claims were dismissed "*without prejudice to any statutory rights that the Claimant may have to pursue a remedy under the RICO statute in a court of law.*" But, having agreed to submit its entire case to arbitration, V Cars is without "any statutory rights" it may pursue in a court of law. All of its RICO claims were heard and decided by the arbitral tribunal. As noted by the district court in its ruling in this matter, "Plaintiff . . . has no separate statutory right to remedies not already assessed by the [Hong Kong International Arbitration Centre]."

The district court did not err in denying the plaintiff's motion for permission to file a second amended complaint. The arbitration proceedings in Hong Kong provided V Cars with the opportunity to raise all of the RICO claims available to it. Because the arbitral tribunal had jurisdiction over the claims, because the arbitrators issued a final decision on the merits of the claims, and because the arbitration proceedings and the federal court proceedings involved the same parties and the same causes of action, principles of *res judicata* preclude V Cars from pursuing their RICO claims in another forum. We therefore AFFIRM the judgment of the district court.