NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0223n.06

No. 16-5751

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

PEGGY D. MARSHALL, )
)
Plaintiff-Appellant, )
)
v. )
)
SSC NASHVILLE OPERATING CO., LLC, dba )
SAVA Senior Care and Greenhills Health )
Rehabilitation Center, )
)
Defendant-Appellee. )

**FILED**
Apr 18, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE MIDDLE
DISTRICT OF TENNESSEE

BEFORE: BOGGS, SILER, and DONALD, Circuit Judges.

BOGGS, Circuit Judge. This is a straightforward arbitration case. The plaintiff, Peggy Marshall, filed a claim in federal district court against her employer, operated by SSC Nashville, alleging wage discrimination and improper termination under the Age Discrimination in Employment Act (ADEA) and the Tennessee Human Rights Act (THRA). Pursuant to the terms of her employment contract, her claims were transferred to a private arbitrator. After discovery and a hearing, the arbitrator denied both of Marshall's claims. Marshall responded by filing a motion in district court to vacate or modify the arbitrator's decision with respect to her wage-discrimination claim. The district court denied the motion, and Marshall brings this timely appeal. We affirm the decision of the district court to deny Marshall's motion to vacate or modify the arbitrator's decision.

I

A

Plaintiff Peggy Marshall was born on October 30, 1948. She received a Bachelor of Science in physical therapy from the University of Tennessee in 1970, and she has practiced continuously as a licensed physical therapist since 1971. In 1995, she began working as a staff physical therapist for SAVA Senior Care ("SAVA"), an organization that operates various nursing homes and rehabilitation facilities across the United States. She later worked as a rehabilitation-program manager (also referred to simply as "program manager") for two SAVA facilities in Texas, and, in 2007, she applied to work as a program manager for SAVA's Green Hills facility in Nashville, Tennessee. She was hired after a short interview process and worked at that facility as a rehabilitation-program manager until her employment was terminated in 2014. At the time that her employment ended, she was 65 years old.

During her time as the rehabilitation-program manager for the Green Hills location, Marshall reported to SAVA's District Rehabilitation Director for the South and Southeast Districts who oversaw the management of SAVA's facilities in several states, including Tennessee. SAVA employed several individuals in that position throughout Marshall's tenure. During most of the events relevant to this dispute, however, Marshall's District Rehabilitation Director was Kevin Lindsey. Lindsey visited the Green Hills facility and met with Marshall and other employees on a monthly basis. Lindsey, in turn, reported to Tracy Hayworth, who was then working as SAVA's Vice President of Rehabilitation. Together, Lindsey and Hayworth had access to Marshall's employment records and were responsible for her position within the company and her compensation.

In early 2014, Hayworth initiated an organization-wide discussion about the proper placement of rehabilitation-program managers at SAVA's facilities. According to Hayworth, the intent was not to eliminate program managers, but rather to ensure that existing managers were "in the right seat on the bus." As part of these discussions, Hayworth and Lindsey concluded that Marshall's services could be better utilized at a facility with more long-term patients because they perceived that Marshall was uniquely talented in identifying subtle changes in long-term patient conditions. Thus, they decided to offer Marshall the program manager position at several other SAVA facilities in Tennessee and North Carolina.

Around the same time, and allegedly after Hayworth and Lindsey had decided to move Marshall from the Green Hills location, Amy McCann applied for the rehabilitation-program-manager position at Green Hills.[1] She was 39 years old and had previously worked with both Hayworth and Lindsey. After an interview with Hayworth, Lindsey, and the Green Hills administrator, the decision was made to give McCann the program manager position.

At this time, Lindsey approached Marshall and formally offered her the program manager positions at the facilities in Norris, Tennessee, Newport, Tennessee, and Forest City, North Carolina. Marshall declined, expressing a desire to remain in Nashville. Although neither SAVA nor Marshall considered Marshall's employment to be terminated, Lindsey informed the Green Hills staff that Marshall would no longer be working as the facility's program manager. In an attempt to retain Marshall, Hayworth proposed to create an interim program-manager position. As interim manager, Marshall would fill in as a temporary mobile manager at SAVA facilities that were transitioning between permanent program managers, all while maintaining her

---

[1] Marshall disputes this timeline. She claims that the decision to move her to a different facility and the decision to hire McCann were made together and contemporaneously with one another—i.e., that Hayworth and Lindsey conspired to replace the older Marshall with the younger McCann. This formed the basis of Marshall's improper-termination claim at arbitration but was not raised in her motion to vacate the arbitrator's decision before the district court.

home in Nashville. After Marshall rejected this offer, claiming that she had lost trust in SAVA as an employer, her employment was formally terminated in June 2014.

Sometime prior to her termination in 2014, Marshall became aware that she was being paid substantially less than rehabilitation managers at other facilities, despite the fact that she had more experience as a therapist and as a program manager.[2] At the time that her employment was terminated, Marshall was earning $81,329 per year. Other program managers who were supervised by Lindsey earned salaries ranging from $82,742 to $116,431, while other program managers in Tennessee earned salaries ranging from $92,123 to $96,012. Amy McCann, Marshall's immediate replacement, earned a starting salary of $100,800. Every other program manager was younger than Marshall and had less experience both as a manager and as an employee of SAVA. At no point prior to her termination did she raise the issue of this pay discrepancy with her superiors, including Lindsey and Hayworth.

B

Marshall filed a claim for wage discrimination and improper termination in federal district court on July 31, 2014, alleging violations of the ADEA and the THRA. On September 10, 2014, the parties filed a joint motion to stay proceedings and submit the matter to arbitration pursuant to the defendant-appellee's "Alternative Dispute Resolution Program." The district court granted the motion, and Marshall submitted both claims in her amended complaint to the arbitrator on February 10, 2015. Following discovery, the parties conducted a hearing before the

---

[2] The exact timeline of events concerning compensation is unclear. Marshall testified at her arbitration hearing that at some point prior to the termination of her employment, she inadvertently received a "DOSUM" document from Kevin Lindsey containing the monthly financial information for all of the facilities under Lindsey's management. Based on this document, she was able to determine her pay relative to the other rehabilitation program managers in Tennessee. At the time of the hearing, however, she was unable to recall when she received the document.

arbitrator on September 15, 2015, and subsequently submitted additional post-hearing briefs and response briefs.

The arbitrator denied both of Marshall's claims in a memorandum opinion on November 30, 2015. The arbitrator concluded that, based on the evidence submitted by the parties, Marshall was neither paid less nor terminated on account of her age. Instead, the arbitrator concluded that the decision to terminate Marshall's employment was "a legitimate business decision" and that "the relative rates of pay for the Rehab Program Managers in the Region were established as a result of individually-negotiated salaries." With regards to Marshall's wage-discrimination claim, the arbitrator specifically relied upon testimony from Lindsey.[3]

Dissatisfied with the arbitrator's decision, Marshall filed a timely motion to vacate or modify the arbitrator's award denying her relief on her wage-discrimination claim.[4] Marshall raised three arguments in her motion: (1) that the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon her claims was not made; (2) that the arbitrator acted in manifest disregard of the applicable law and in violation of clear public policy; and (3) that there was an evident material mistake in the description of the facts and evidence presented at the hearing with respect to Marshall's claims. In support of these arguments, Marshall cited Hayworth's deposition testimony, where she repeatedly stated that she did not know why the younger rehabilitation program managers received higher salaries. The district court denied Marshall's motion, concluding that the arbitrator's decision to rely more

---

[3] Lindsey testified that "SAVA had a process by which existing employees could seek a market adjustment in their compensation and some employees were able to increase their compensation by using this process. . . . Peggy Marshall never requested such an adjustment." With respect to the discrepancy in the salaries paid to Marshall and McCann, Lindsey attributed the disparity to McCann's decision to "negotiate[] keeping her same rate" that she'd earned at one of SAVA's Texas facilities, which "was a higher paying market."

[4] Although Marshall also disagreed with the arbitrator's decision to deny her termination claim, "she did not believe that she could successfully challenge that portion of the award under the applicable legal standard and, thus, did not do so." Appellant's Br. at 4.

heavily on Lindsey's testimony was "a reasonable basis for his decision with regard to Plaintiff's wage discrimination claim" and that thus his decision "d[id] not represent an abuse of discretion or an imperfect execution of his powers." Marshall re-raises all three arguments in this timely appeal.

II

In reviewing a district court's decision confirming or vacating an arbitration award, we evaluate the district court's findings of fact for clear error and questions of law *de novo. See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 947–48 (1995).

A

When courts are called upon to review an arbitrator's decision, this review is "one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 625 (6th Cir. 2002) ("*Nationwide II*") (quoting *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990)). "The Federal Arbitration Act ("FAA") expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) ("*Nationwide IV*") (citing *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998)); *see also* 9 U.S.C. § 9 ("If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10 and 11]."). Outside of the narrow grounds for vacating or modifying an award enumerated in 9 U.S.C. §§ 10 and 11, the court must uphold the arbitrator's decision as long as "the arbitrator is even arguably . . . acting within the scope of his authority." *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 752–53 (6th Cir. 2007) (en banc) (quoting *United Paperworkers Int'l*

*Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008) ("We now hold that §§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification."). The mere fact "that a court is convinced [that the arbitrator] committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union*, 484 U.S. at 38.

The FAA provides four circumstances in which a district court may vacate an arbitration award:

(1) Where the award was procured by corruption, fraud, or undue means;

(2) Where there was evident partiality or corruption in the arbitrators, or either of them;

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Marshall does not argue that her claim was denied on account of corruption, fraud, or misconduct. Rather, she argues that the arbitrator exceeded his power because he applied the law incorrectly. *See* Appellant's Br. at 12 (citing 9 U.S.C. § 10(a)(4)).

In the alternative, Marshall argues that the award should be vacated because the arbitrator's decision amounted to a "manifest disregard of the law." *Ibid.* We have previously held that despite the Supreme Court's language in *Hall Street Associates*, the "manifest disregard" doctrine remains a viable ground for attacking an arbitrator's decision where "(1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Coffee Beanery, Ltd. v. WW, L.L.C.*, 300 F. App'x 415, 418 (6th Cir. 2008) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*,

70 F.3d 418, 421 (6th Cir. 1995)). This is not an easy standard to meet. "A mere error in interpretation or application of the law is insufficient. Rather, the decision must fly in the face of clearly established legal precedent." *Jaros*, 70 F.3d at 421 (citation omitted).

Finally, Marshall argues (albeit only in passing) that this court should modify the arbitrator's decision because of "an evident material mistake in the description of, among other things, the facts or claims in the award." Appellant's Br. at 12 (citing 9 U.S.C. § 11(a)). Although she does not expand this argument in detail in her brief, the thrust of her third claim is roughly the same as the first two claims that she raises in this appeal: that the arbitrator erred in applying the substantive law to her case.

Stated in reverse, Marshall argues that the arbitrator misapplied the ADEA and the THRA to the facts of her case. She asserts that this would permit this court to vacate or modify the arbitrator's decision for three reasons: (1) this amounts to an excess of the arbitrator's powers; (2) this amounts to a "manifest disregard of the law"; and (3) this amounts to an "evident material mistake" in the facts or claims in the award. In support of her theory that the arbitrator misapplied the law, Marshall relies almost exclusively on the testimony of Tracy Hayworth, who stated during arbitration that she did not know why Marshall was paid less than her younger peers. Appellant's Br. at 20–26. Her argument is unpersuasive and cannot overcome the substantial deference that courts must give to an arbitrator's decision on review.

B

It is unlawful, under both the ADEA and the age-discrimination provisions of the THRA, for an employer to discriminate against an employee with respect to that employee's compensation on account of age. *See* 29 U.S.C. § 623(a)(1); Tenn. Code Ann. § 4-21-401(a)(1). "To establish a *prima facie* claim of age discrimination under the ADEA, a plaintiff must show

that: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position; and (4) she was replaced by a younger worker." *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007) (citation omitted). "The fourth element may be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Ibid.* (citing *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 511 (6th Cir. 2004)). If a plaintiff can establish a *prima facie* case, the burden of production shifts to the defendant to articulate a non-discriminatory reason for the adverse employment action. *Ibid.* If the defendant can do so, then the burden shifts back to the plaintiff to "demonstrate by a preponderence of the evidence that the defendant's proffered reason was a pretext for age discrimination." *Ibid.* Tennessee courts have employed the same burden-shifting framework in interpreting the age-discrimination provisions of the THRA. *See Wilson v. Rubin*, 104 S.W.3d 39, 50–51 (Tenn. Ct. App. 2002).

When the alleged age discrimination involves a claim of age-based wage discrimination, we have interpreted the fourth element's "similarly situated" requirement to include factors such as "the skill, effort, and responsibilities of each job and the working conditions under which each job is performed." *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 522 (6th Cir. 2008) (quoting *Conti v. Universal Enters., Inc.*, 50 F. App'x 690, 699 (6th Cir. 2002)). Marshall argues, and the district court seems to have assumed, that we analyze age-based wage discrimination claims filed under the ADEA in accordance with Equal Pay Act principles. *See* Appellant's Br. at 17–20. Although our established case law has long connected the merits of the Equal Pay Act with Title VII, *see Crowder v. Railcrew Xpress*, 557 F. App'x 487, 494 (6th Cir. 2014), and the ADEA mirrors Title VII in most respects,[5] we have never definitively

---

[5] Specifically, the Equal Pay Act appears to adopt the burden-shifting framework of the ADEA with additional statutorily enumerated non-discriminatory reasons for an alleged wage disparity. In *Mickey*, we held that

incorporated Equal Pay Act analysis into our ADEA jurisprudence. We need not reach this issue, however, because whether analyzed under Equal Pay Act principles or the ADEA, Marshall cannot demonstrate that the arbitrator misinterpreted the law—much less that the arbitrator exceeded his authority such that Marshall is entitled to a vacatur of the arbitrator's judgment.

Marshall seems to argue that Hayworth's testimony, in which she repeatedly states that she does not know why Marshall was paid less than other rehabilitation-program managers in Tennessee, is sufficient to satisfy her burden of production under the ADEA and that the arbitrator was wrong to conclude otherwise. *See* Appellant's Br. at 20–25. Marshall's selective portrayal of Hayworth's testimony is misleading. While Hayworth did repeatedly state that she did not know the reasoning behind specific employees' salaries, she also testified that employees typically negotiated their pay. Although she could not recall specific examples, she also testified that various non-age factors influenced an employee's salary, including location, experience, and advanced degrees. Finally, she specifically referred to Kevin Lindsey—the same individual upon whose testimony the arbitrator *explicitly* relied in his decision—as someone who would have greater knowledge about the negotiation of various employees' salaries. Lindsey would go on to testify that it was negotiation, and not age discrimination, that accounted for the disparities between Marshall's salary and those of her peers.

The fact that the arbitrator chose to weigh Lindsey's detailed testimony more heavily than Hayworth's vague answers in concluding that a valid non-discriminatory reason existed for

---

"[f]or the purposes of resolving an age-based wage discrimination claim under the ADEA, we find that 'the relevant factors include the skill, effort, and responsibilities of each job and the working conditions under which each job is performed.'" 516 F.3d at 522 (citation omitted). These factors are similar to those contained within the Equal Pay Act, which prohibits sex-based wage disparities for the performance of jobs that "require[] equal skill, effort, and responsibility" but adds additional exceptions "where such payment is made pursuant to (i) a seniority system;, (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex ." 29 U.S.C. § 206(d).

Marshall's lesser pay does not amount to an action in excess of the arbitrator's powers, a "manifest disregard of the law," or an "evident material mistake" in the facts of the award. It does not even amount to "serious error," a case in which we would *still* be bound to uphold the arbitrator's decision. *See United Paperworkers Int'l Union*, 484 U.S. at 38. Because Marshall cannot demonstrate that the arbitrator's decision was in error, much less that it "fl[ies] in the face of clearly established legal precedent," *Jaros*, 70 F.3d at 421 (citation omitted), she cannot overcome the substantial deference that we give to an arbitrator's decision on judicial review.

III

Like many who have brought their case before an arbitrator and lost, Marshall seeks a second opportunity to litigate her claim before the courts. Because the FAA was enacted "to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts,'" *Hall Street Assocs., L.L.C.*, 552 U.S. at 582 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)), the enforceability of an arbitration award is subject only to a few narrowly construed exceptions. Because Marshall cannot meet any of those exceptions, we AFFIRM the district court's denial of Marshall's motion to vacate or modify the arbitrator's award.