RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0260p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

BAY SHORE POWER COMPANY,

          *Plaintiff-Appellant*,

    *v.*

OXBOW ENERGY SOLUTIONS, LLC,

          *Defendant-Appellee*.

> No. 20-3119

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 3:17-cv-01982—Jeffrey James Helmick, District Judge.

Decided and Filed: August 13, 2020

Before: MOORE, CLAY, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:** Gregory J. Phillips, Nicholas J. Secco, Trevor G. Covey, James E. von der Heydt, BENESCH FRIEDLANDER, COPLAN & ARONOFF LLP, Cleveland, Ohio, for Appellant. John P. Gilligan, Daniel M. Anderson, ICE MILLER LLP, Columbus, Ohio, Derek R. Molter, ICE MILLER LLP, Indianapolis, Indiana, for Appellee.

      CLAY, J., delivered the opinion of the court in which MOORE, J., joined. MURPHY, J. (pp. 11–21), delivered a separate dissenting opinion.

───────────────

## OPINION

───────────────

      CLAY, Circuit Judge. In 1998, Oxbow Energy Solutions ("Oxbow") entered into a long-term supply contract to provide limestone to Bay Shore Power Company ("Bay Shore"). In 2014, Oxbow breached the agreement and Bay Shore initiated arbitration proceedings to

vindicate its rights under the contract. After Bay Shore prevailed, it filed the instant action to confirm the arbitration award and recover its attorneys' fees. The district court granted summary judgment for Oxbow, finding that the contract provides that both parties are to bear their own attorneys' fees with no possibility of recovery by the prevailing party. For the reasons that follow, we disagree with the district court's reasoning and **REVERSE** its judgment.

## BACKGROUND

In 1998, Bay Shore entered into a Limestone Supply Agreement ("LSA") with Oxbow to provide limestone with certain chemical characteristics. The parties agreed to resolve any disputes that might arise according to specified "Dispute Resolution Procedures." R. 7-1, LSA, PageID # 50. These procedures are listed in Annex A of the LSA, under a section entitled "Definitions and Interpretation." *Id.* at 53, 56–58. The procedures provide that if informal negotiations between the parties and mediation attempts fail, then any dispute shall be settled by binding arbitration. The parties further agreed that following arbitration any party could appeal "to any State or Federal court of competent jurisdiction sitting in Cleveland, Ohio on the basis that the panel has made a mistake of law or the panel's finding or award is against the weight of evidence or is beyond the power or jurisdiction of the panel." *Id.* at 58.

In 2013, the supplier of limestone that Oxbow was providing to Bay Shore raised the price of its product. As a result, it was no longer profitable for Oxbow to provide that limestone to Bay Shore under the contract price and so, by early 2014, without Bay Shore's permission, Oxbow began to provide lower quality limestone. The inferior limestone posed a danger to Bay Shore's equipment. The limestone was necessary for the proper functioning of a Circulating Fluidized Bed boiler, a critical piece of equipment at Bay Shore's electrical power plant. Bay Shore subsequently agreed to pay—under protest—a price in excess of that permitted by the LSA for adequate limestone. After private negotiations and mediation failed in 2015, Bay Shore invoked the Dispute Resolution Procedures and filed a demand for arbitration in 2016.

In 2017, a three-member arbitration panel ruled in favor of Bay Shore. The panel unanimously held that Oxbow had breached the LSA by refusing to provide limestone at the agreed-upon price, and awarded Bay Shore nearly $5 million in damages, costs, and interest.

The arbitration panel did not, however, award attorneys' fees to Bay Shore. It determined that the provision of the Dispute Resolution Procedures that empowered the panel to "assess the costs of the arbitration . . . against any party as the panel shall determine" expressly "denies it the jurisdiction to award attorneys' fees." R. 7-4, Arb. Award, PageID # 99.

Bay Shore then filed an "Application to Confirm Arbitration Award and to Award Attorneys' Fees" in federal district court. R. 1, Application, PageID # 1. In response to a joint motion from the parties, the court confirmed the panel's award and ordered Oxbow to pay it immediately, which Oxbow did. The parties then filed cross-motions for summary judgment on the attorneys' fees issue. The district court ruled for Oxbow, determining that the LSA did not permit the prevailing party to recover its attorneys' fees from the non-prevailing party.

According to the district court, mutually conflicting provisions in the LSA barred recovery of attorneys' fees. One provision in the Dispute Resolution Procedures (subsection (b)(iv)) reads:

> (iv) <u>Binding Nature</u>. Any decision rendered by the arbitrators pursuant to any arbitration shall be final and binding upon the parties hereto, and judgment may be entered upon it in accordance with Applicable Law in any court of competent jurisdiction, including award of damages or injunctive relief, and may, in the discretion of the panel, assess the costs of the arbitration (including reasonable fees and expenses of the members of the panel) against any party as the panel shall determine (*but excluding attorneys' fees which shall be borne by each party individually*).

R. 7-1, LSA, PageID # 57–58 (emphasis added). The provision immediately following this one appears to be in conflict because it grants the prevailing party a right to attorneys' fees. That clause (subsection (b)(v)) provides:

> (v) <u>Costs and Expenses</u>. The prevailing party in any arbitration or court proceedings shall be reimbursed by the other party for all costs, expenses and charges, including, without limitation, reasonable attorneys' fees, incurred by said prevailing party.

*Id.* at 58. To add another complication, a third provision—located in the "Miscellaneous" article of the LSA—also indicates that the prevailing party is entitled to an award of its attorneys' fees:

Section 15.7. <u>Attorneys' Fees</u>. If legal advice or assistance is obtained to enforce any provision of this Agreement and a final determination of a court of competent jurisdiction is made, the prevailing party shall recover from the non-prevailing party all reasonable attorneys' costs, expenses and fees incurred in connection therewith.

*Id.* at 50.[1]

The district court held that there was no "meeting of the minds" on whether the non-prevailing party should reimburse the prevailing party for its attorneys' fees because the LSA provisions on attorneys' fees contradicted each other and it was impossible under Ohio law to harmonize the clauses. R. 36, Dist. Ct. Summ. J. Order, PageID # 551. Specifically, it found:

Ultimately, I can ignore subsection (b)(iv)'s "which shall be borne by each party individually," no more than I could ignore subsection (b)(v)'s "arbitration or." Because the two provisions are irreconcilable, I must conclude there was no meeting of the minds as to arbitration-related attorneys' fees and find subsection (b)(v) unenforceable insomuch as it relates to arbitration-related attorneys' fees.

*Id.* It therefore granted Oxbow's motion for summary judgment and denied Bay Shore's. This timely appeal followed.

**DISCUSSION**

This Court reviews district court orders granting summary judgment *de novo*. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004). We also review *de novo* a denial of a cross-motion for summary judgment on purely legal grounds—such as Bay Shore's in the present case. *See id.* This appeal does not turn on the presence, or absence, of a genuine dispute of any material fact, but rather presents a narrow question of contract interpretation.

Bay Shore contends that "[t]he language within the LSA's four corners provides a clear path to reconcile the fee-shifting clauses, through a simple sequencing of arbitral and court jurisdiction." Appellant's Br. at 12. While subsection (b)(iv) "forbids an arbitration panel from awarding fees to the prevailing party in arbitration," subsection (b)(v) and Section 15.7 "unambiguously shift fees to the prevailing party." *Id.* The only way to harmonize these

---

[1]Section 15.6, which provides for the resolution of "[a]ny dispute" in accordance with the Dispute Resolution Procedures is also located within the "Miscellaneous" article of the LSA. R. 7-1, LSA, PageID # 49–50.

clauses, Bay Shore says, is to read the former provision as limiting the arbitration panel's jurisdiction to award attorneys' fees and the latter two as granting the prevailing party the right to recover attorneys' fees through an action in court.[2]

This argument first raises the question of federal subject matter jurisdiction over an arbitration award. The Supreme Court has held that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, does not provide federal courts with an independent basis for subject matter jurisdiction. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581–82 (2008). For cases within a federal court's jurisdiction, section 9 of the FAA permits parties to apply to a court "for an order confirming" an arbitration award. 9 U.S.C. § 9. Aside from narrow grounds allowing a court to modify, vacate, or correct an award that are not relevant here, *id.* §§ 10–11, courts can do no more than confirm or deny confirmation of the award. "[A]n action to confirm the award should be a summary proceeding, not a proceeding in which the defendant seeks affirmative relief." *Occidental Chem. Corp. v. Int'l Chem. Workers Union*, 853 F.2d 1310, 1317 (6th Cir. 1988) (quoting *Prof'l Adm'rs Ltd. v. Kopper-Glo Fuel, Inc.*, 819 F.2d 639, 642 (6th Cir. 1987)). Oxbow maintains that the arbitration panel's decision to not award attorneys' fees was part of the panel's merits decision and is insulated from judicial review because the LSA delegates "any dispute" arising under the LSA to an arbitration panel and mandates that the panel's resolution of any dispute will be "final and binding upon the parties." Appellee's Br. at 12–13.[3]

Oxbow's argument underscores that this case is about arbitrability—that is, to what extent the parties delegated dispute resolution to an arbitrator. As we have recently reaffirmed, it is a "central tenet of the FAA" that "arbitration pursuant to the statute is 'a matter of consent, not coercion.'" *Taylor v. Pilot Corp.*, 955 F.3d 572, 577 (6th Cir. 2020) (quoting *Volt Info. Scis.,*

---

[2]Oxbow argues that Bay Shore waived its argument regarding how the provisions can be harmonized because it did not make this argument until its opening brief on appeal. Not so. For example, in its motion for summary judgment before the district court, Bay Shore argued: "To expand a single parenthetical limiting *the arbitrators' jurisdiction* to overwrite and render superfluous two separate provisions inserted specifically and solely to allow the prevailing party to recover its fees is unreasonable and violates fundamental tenets of contract construction and interpretation." R. 32-1, Br. in Support of Bay Shore's Mot. for Summ. J., PageID # 485.

[3]Oxbow does not contest that this Court has diversity jurisdiction over this matter. In fact, the parties are citizens of different states and the amount in controversy regarding attorneys' fees is well in excess of $75,000. 28 U.S.C. § 1332. Instead, as noted above, Oxbow's argument is that the FAA limits our jurisdiction because the parties allegedly delegated the issue of attorneys' fees to the arbitration panel's discretion.

*Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).  It is clear that the parties consented to binding arbitration and indicated that "[a]ny decision rendered by the arbitrators pursuant to any arbitration shall be final and binding upon the parties hereto."  R. 7-1, LSA, PageID # 57.  However, Bay Shore's proposed construction of the LSA relies on the fact that the parties specifically excluded the issue of attorneys' fees from the list of arbitrable issues.

The arbitration panel acknowledged this by first observing that section 15.7 did not provide it with the authority to award attorneys' fees because that provision provides for an award of attorneys' fees after "a final determination of a court of competent jurisdiction is made" and "this arbitration was initiated and has been conducted pursuant to Section 15.6, Dispute Resolution, of the LSA, and is not currently before a court."  R. 7-4, Arb. Award, PageID # 98.  It concluded that the Dispute Resolution Procedures "specifically den[y] it the jurisdiction to award attorneys' fees to the prevailing party" and "[t]he provision in the LSA authorizing an award of attorneys' fees, Section 15.7 . . . applies only to courts, not to arbitration panels."  *Id.* at 99.  Therefore, it denied Bay Shore's request for attorney's fees.  This careful parsing of the LSA indicates that the panel understood that while it lacked jurisdiction to award attorneys' fees, section 15.7 provides a court with such authority.

The panel's "final and binding" decision correctly recognized that the LSA provides for a court to decide whether the parties intended for the prevailing party to recover its fees through a legal action.  Bay Shore's motion for attorneys' fees is not an impermissible attempt to modify the panel's binding arbitration award, but rather is an attempt to vindicate a separate contract right with respect to an issue that was not delegated to the arbitrators.  For comparison, consider our decision in *Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC*, 610 F. App'x 464 (6th Cir. 2015).  In that case, we found that the district court did not have the authority to award attorneys' fees in a confirmation proceeding because the parties agreed to submit their entire dispute to arbitration.  *Id.* at 470.  Unlike the LSA at issue here, the contract in *Crossville* had no limiting language with respect to the arbitration panel's jurisdiction:  "The Agreement here only authorizes an *arbitrator* to award attorneys' fees and costs during *arbitration,* and authorizes the district court to enter the award as a judgment."  *Id.* at 468.

Moreover, the Fifth Circuit's decision in *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578 (5th Cir. 1986), which we relied on in *Crossville*, *see* 610 F. App'x at 469–70, is in accord on this point as well.  The Fifth Circuit found that "the only issue submitted to the arbitrators was the fair market value of the franchise."  806 F.2d at 581.  The court also recognized that, "[i]f, as is often the case, the arbitration agreement had provided that 'any dispute arising from the contract' would be submitted to arbitration, a strong case could be made that any award of attorney's fees, interest, and costs was necessarily submitted to the arbitrators and a district court that made such an award would be impermissibly modifying the arbitrators' decision."  *Id.*  However, because the agreement did not contain that language, "the district court was free to consider whether an award of attorney's fees, interest, and costs was appropriate and that such an award would not impermissibly modify the arbitrators' decision."  *Id.*

In the present case, the arbitration clause in the LSA allows an arbitration panel much broader authority than the single issue authority delegated to the arbitrators in *Schlobohm*.  However, the parenthetical in subsection (b)(iv) carving out attorneys' fees from the panel's jurisdiction indicates that "any dispute" except for attorneys' fees is to be "submitted to the arbitrators."  *Id.*  Consequently, the district court in the present case would not be impermissibly modifying the arbitrators' award by granting Bay Shore attorneys' fees in accordance with subsection (b)(v) and section 15.7.  We are thus properly tasked with interpreting the meaning of the provisions at issue to determine if they permit a court to award the prevailing party its attorneys' fees accrued in the course of enforcing the LSA.

Oxbow maintains that Bay Shore's proposed interpretation of the LSA is not supported by Ohio contract law.  The LSA provides that Ohio law governs all interpretations of the agreement.  Under Ohio law, "contracts are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 313 N.E.2d 374, 376 (Ohio 1974).  If the terms fail to show an objective meeting of the minds, then the contract may not be enforced. *See 216 Jamaica Ave., LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008) (Ohio law requires "that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was clear and unambiguous"); *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002) ("A meeting of the

minds as to the essential terms of the contract is a requirement to enforcing the contract."). Importantly, a court "should attempt to harmonize all the provisions rather than produce conflict in them." *Ottery v. Bland*, 536 N.E.2d 651, 654 (Ohio Ct. App. 1987). "To that end, no provision of the contract should be ignored as inconsistent if there exists a reasonable interpretation which gives effect to both." *Id.*

We have explained that "Ohio law instructs courts to 'attempt to reconcile inconsistent contract terms and give effect to each term.'" *Exp.-Imp. Bank of U.S. v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 248 (6th Cir. 2010) (quoting *In re Graham Square, Inc.*, 126 F.3d 823, 830 (6th Cir. 1997)). "This means that the law recognizes that, in certain circumstances, provisions in a contract will seem to contradict. But courts must seek to find a construction that would give effect to each term, and only if such a construction is impossible will the contract be deemed unenforceable." *Id.*; *see also Wohl v. Swinney*, 888 N.E.2d 1062, 1066 (Ohio 2008) ("When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary."); *Expanded Metal Fireproofing Co. v. Noel Const. Co.*, 101 N.E. 348, 350 (Ohio 1913) ("No provision of a contract is to be disregarded as inconsistent with other provisions, unless no other reasonable construction is possible.")

Bay Shore asserts that subsection (b)(iv), the provision stripping the arbitration panel's jurisdiction to award attorneys' fees, merely indicates that the parties are meant to initially bear their own fees, but the prevailing party may then seek reimbursement in court. That is why subsection (b)(v) and section 15.7 permit the recovery of attorneys' fees through a legal action. According to Bay Shore, "[t]his reading is very far from 'impossible'; indeed, given the sophistication of the parties and the intensive nature of the LSA negotiations in which they set the terms for a twenty-year multimillion-dollar transaction, it is overwhelmingly likely." Appellant's Br. at 21.

The fact of the matter is that two provisions in the LSA unequivocally provide for the recovery of attorneys' fees. Section 15.7 provides for the recovery of "all reasonable attorneys' costs, expenses and fees incurred" after "a final determination of a court of competent jurisdiction is made," while subsection (b)(v) permits recovery by "[t]he prevailing party in any

arbitration or court proceedings." R. 7-1, LSA, PageID # 50, 58. The references to legal proceedings support Bay Shore's reading of the clauses, according to which the prevailing party must seek a court order for attorneys' fees after the arbitration panel has issued a decision on the merits. The broad phrasing in section 15.7—i.e., "all reasonable attorneys' . . . fees"—and the reference to "arbitration" in subsection (b)(v) also indicate that the parties intended for fees accrued in the course of arbitration to be recovered.

Moreover, subsection (b)(v) provides that the prevailing party is to be "reimbursed" for its attorneys' fees. "Reimburse" means "to pay back to someone" or "to make restoration or payment of an equivalent to," indicating that an individual has already incurred some expense. *Reimburse*, Merriam-Webster, https://www.merriam-webster.com/dictionary/reimburse. In this way, subsection (b)(v) accords with subsection (b)(iv). Each party bears its own attorneys' fees during arbitration, but the prevailing party may seek reimbursement in court following an arbitration award. This reading recognizes the "specific purpose" of each provision and avoids an interpretation that "render[s] portions meaningless or unnecessary." *Wohl*, 888 N.E.2d at 1066.

Furthermore, subsection (b)(iv) only refers to what the arbitration panel may do in its "discretion" (i.e., "assess the costs of the arbitration . . . (but excluding attorneys' fees)"). R. 7-1, LSA, PageID # 57–58. This reinforces Bay Shore's view that while the parties did not intend for the arbitration panel to assess attorneys' fees, they did intend for a court to do so. While the parties would have done well to draft contract terms clear enough to avoid this dispute, Bay Shore's construction of the clauses is not at all "impossible." *Exp.-Imp. Bank*, 604 F.3d at 248. Instead it "give[s] effect to each term." *Id*. Ohio law compels us to accept such a "reasonable" construction. *Ottery*, 536 N.E.2d at 654; *Expanded Metal Fireproofing Co.*, 101 N.E. at 350.

Oxbow argues that the LSA cannot be read to permit the recovery of attorneys' fees because the FAA does not permit courts to accept evidence during an arbitration award confirmation proceeding and so there would be no means for a court to determine which fees were reasonable. *See Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th Cir. 1994) (observing that because the FAA does not provide "for taking of evidence on an issue such as attorneys' fees, . . . the court [would be] powerless to receive evidence concerning attorneys' fees and award

an[y] amount it would find appropriate" (quoting *Raytheon Co. v. Comput. Distrib., Inc.*, 632 F. Supp. 553, 560 (D. Mass. 1986))).  However, there is no obstacle to the district court taking evidence on attorneys' fees in the present case because the parties did not delegate the issue of attorneys' fees to the arbitrators' discretion.  Bay Shore's motion for attorneys' fees is not part of the confirmation proceeding governed by the FAA, but rather constitutes a separate contract action.  As we observed in *Crossville*, "the prevailing American rule . . . that each party in federal litigation pays his own attorneys' fees" can be displaced by "contractual agreement between the parties."  610 F. App'x at 470 (quoting *Menke*, 17 F.3d at 1009).

Ultimately, the provisions at issue can either be read together to permit the recovery of attorneys' fees in court but not before an arbitration panel, or they are hopelessly contradictory and unenforceable.  Bay Shore presents a reasonable construction of the terms to harmonize them while Oxbow only presents reasons to be skeptical of Bay Shore's interpretation.  None of those reasons are compelling; nor do any of them render Bay Shore's interpretation impossible. *See Exp.-Imp. Bank*, 604 F.3d at 248.  Consequently, Bay Shore's interpretation governs, and as the prevailing party it may recover from Oxbow its reasonable attorneys' fees paid in the course of enforcing the LSA through arbitration and the instant lawsuit.  Bay Shore, rather than Oxbow, is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons provided above, we **REVERSE** the district court's judgment and **REMAND** the case to the district court with instructions to enter summary judgment in favor of Bay Shore and to calculate and award it reasonable attorneys' fees in accordance with the LSA.

––––––––––––––––––––

**DISSENT**

––––––––––––––––––––

MURPHY, Circuit Judge, dissenting. Contracts frequently include terms that permit the prevailing party to recover its attorney's fees from the other side if a dispute arises between them. And contracts frequently include terms that instead stick with the "American Rule," under which the parties cover their own attorney's fees. But contracts usually do not include *both* sets of terms—as the contract in this case does. One provision *prohibits* the shifting of attorney's fees to the prevailing party, while the other *requires* the shifting of those fees. An arbitration panel declined to award attorney's fees in light of these conflicting provisions, and the prevailing party now seeks them from us. I would affirm the district court's decision not to award fees or at least remand for proceedings on this ambiguous contract's meaning.

Oxbow Energy Solutions agreed to supply limestone to Bay Shore Power Company. The parties eventually disputed whether Oxbow provided deficient limestone. The Agreement contained a broad arbitration clause. Section 15.6 stated: "Any dispute arising under this Agreement shall be resolved in accordance with the Dispute Resolution Procedures." Agreement, R.7-1, PageID#50. Those procedures, in turn, required arbitration. *Id.*, PageID#57–58. The parties thus arbitrated whether Oxbow breached the contract. An arbitration panel ruled for Bay Shore.

Yet this appeal does not concern the merits. It concerns whether Oxbow must pay the attorney's fees that Bay Shore incurred during arbitration. The Agreement contains three provisions that send mixed signals about attorney's fees. On the one hand, Subsection (b)(iv) in the Agreement's definition of "Dispute Resolution Procedures" *prohibits* the arbitrators from awarding attorney's fees: "Any decision . . . may in the discretion of the panel, assess the costs of the arbitration (including reasonable fees and expenses of the members of the panel) against any party as the panel shall determine (but excluding attorneys' fees which shall be borne by each party individually)[.]" *Id.*, PageID#58.

On the other hand, two different provisions seem to *require* the shifting of attorney's fees. The very next provision in the Agreement's definition of Dispute Resolution Procedures (Subsection (b)(v)) indicates: "The prevailing party in any arbitration or court proceedings shall be reimbursed by the other party for all costs, expenses and charges, including, without limitation, reasonable attorneys' fees, incurred by said prevailing party." *Id*. And another section elsewhere in the Agreement (not in the definition of "Dispute Resolution Procedures") adds to the disconnect. Section 15.7—which follows the section requiring disputes to be resolved through the Dispute Resolution Procedures—authorizes attorney's fees as well: "If legal advice or assistance is obtained to enforce any provision of this Agreement and a final determination of a court of competent jurisdiction is made, the prevailing party shall recover from the non-prevailing party all reasonable attorneys' costs, expenses and fees incurred in connection therewith." *Id.*, PageID#50.

How did the arbitrators reconcile these provisions? The panel "concluded that because the jurisdictional language as to an award of attorneys' fees is unclear, [it did] not have jurisdiction based on the [Agreement's] language to award attorneys' fees." Final Award, R.7-4, PageID#98. The panel reasoned that "[a]rbitration is a creature of contract" and that the arbitrators have "only the jurisdiction and authority to decide claims and issue awards to the extent the parties' agreement so provides." *Id.*, PageID#99. It explained that it had jurisdiction under Section 15.6, which required all disputes to be resolved through the Dispute Resolution Procedures. *Id.* But Section 15.6 "specifically denies it the jurisdiction to award attorneys' fees to the prevailing party." *Id.* And the panel noted that Section 15.7 "applies only to courts not to arbitration panels." *Id.*

After the panel's opinion, Bay Shore filed an "application" in the district court to confirm the arbitration award under the Federal Arbitration Act and to obtain the attorney's fees that the arbitrators declined to grant. The parties agreed to an order confirming the award but filed cross motions for summary judgment on attorney's fees. The district court granted summary judgment to Oxbow. Finding the Agreement's provisions "irreconcilable," the court concluded that "there was no meeting of the minds as to arbitration-related attorneys' fees."

Bay Shore now appeals. I agree with my colleagues that the district court's meeting-of-the-minds reasoning cannot stand. But I would affirm on the alternative ground that Bay Shore's request for attorney's fees conflicts with the Federal Arbitration Act. On the merits, I also find the agreement's provisions ambiguous on this attorney's fees question and so would remand for the introduction of extrinsic evidence under Ohio contract law. I thus respectfully dissent.

I

The arbitrators held that the Agreement barred them from awarding Bay Shore the attorney's fees it incurred in arbitration. Yet Bay Shore asks us to interpret the Agreement de novo and award these very attorney's fees in this confirmation proceeding. Its request conflicts both with the parties' choice to resolve all disputes in arbitration and with the Federal Arbitration Act.

A

Start with first principles governing judicial review of arbitration awards. The Federal Arbitration Act authorizes a party to apply to a court "for an order confirming" an arbitration award where, as here, the parties' agreement allows for such a confirmation. 9 U.S.C. § 9. The Act makes clear that "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11[.]" *Id.* Section 10 permits a party to apply to the court for an order vacating the award in narrow circumstances, such as "where the award was procured by corruption, fraud, or undue means." *Id.* § 10(a)(1). Similarly, § 11 permits a party to apply to the court for an order modifying or correcting the award in other narrow circumstances, such as "[w]here there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award." *Id.* § 11(a). Together, these three sections represent the exclusive framework governing review of arbitration awards when a party seeks to confirm an award under the Federal Arbitration Act. *See Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586–88 (2008).

When no party seeks to vacate or modify the award under §§ 10 or 11, therefore, "an action to confirm the award should be a summary proceeding, not a proceeding in which the defendant seeks affirmative relief." *Occidental Chem. Corp. v. Int'l Chem. Workers Union*, 853

F.2d 1310, 1317 (6th Cir. 1988) (citation omitted); *see Menke v. Monchecourt*, 17 F.3d 1007, 1009 (7th. Cir. 1994); *Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 932 (11th Cir. 1990); *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987). For example, the requesting party files an application—not a complaint—and the Act directs the court to treat this application as a motion, not as a usual initial pleading. *See* 9 U.S.C. §§ 6, 9; *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 308 (3d Cir. 2006); *Health Servs. Mgmt. Corp. v. Hughes*, 975 F.2d 1253, 1257–58 (7th Cir. 1992). The Act streamlines judicial review in this fashion because "[t]he parties have contracted for a decision by arbitrators, not the Court." *Wachovia Secs., Inc. v. Gangale*, 125 F. App'x 671, 676–77 (6th Cir. 2005). And the confirmation order is designed only to "make[] the arbitrators' award a final, enforceable judgment of the court." *Menke*, 17 F.3d at 1009. A confirmation proceeding before a court is not a "redo" of the arbitration proceeding before the arbitrators.

If a party does seek to alter an arbitration award, the party must instead request relief through a motion to vacate or modify the award under 9 U.S.C. §§ 10 or 11. Here too, judicial review is narrow. These sections offer limited paths for changing the award. *See Marshall v. SSC Nashville Operating Co., LLC*, 686 F. App'x 348, 352 (6th Cir. 2017). "When courts are called on to review an arbitrator's decision, the review is very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005) (citation omitted). Courts generally "are not permitted to consider the merits of an arbitration award even if the parties allege that the award rests on errors of fact or misinterpretation of the contract." *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 328 (6th Cir. 1998) (citation omitted); *see Marshall*, 686 F. App'x at 353.

In *Hall Street*, the Supreme Court added that parties may not contract for broader review of an arbitration award beyond the narrow grounds listed in 9 U.S.C. §§ 10 and 11. 552 U.S. at 583–84. There, the parties' contract permitted a court to modify an arbitration award if the arbitrator's findings of fact were not supported by substantial evidence or if the arbitrator's legal rulings were wrong. *Id.* at 579. The Court found these provisions unenforceable—at least if the parties relied on the Federal Arbitration Act (not state law) to obtain judicial review. *Id.* at 584, 590. "[W]hen parties take the [Federal Arbitration Act] shortcut," the Court held, "§§ 10 and 11

respectively provide the [Act's] exclusive grounds for expedited vacatur and modification." *Id.* at 583–84. It reasoned that confirmation was designed to be a streamlined procedure "obviating the separate contract action that would usually be necessary to enforce or tinker with an arbitral award in court." *Id.* at 582. But if the parties could expand that review, it would "open[] the door to the full-bore legal and evidentiary appeals that can 'rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process[.]'" *Id.* at 588 (citation omitted).

B

Bay Shore's request for its arbitration-incurred attorney's fees conflicts with the Federal Arbitration Act. Recall that this case began with Bay Shore's application to *confirm* the arbitration award under the Federal Arbitration Act. 9 U.S.C. § 9. But the arbitration panel refused to provide Bay Shore with its arbitration-related attorney's fees as part of that award. So Bay Shore's further request that we grant it those attorney's fees would compel us to *modify* the award. Bay Shore, however, did not file an application requesting "an order modifying or correcting the award" under 9 U.S.C. § 11. It had good reason not to. Section 11 does not allow courts to modify an arbitration award by reversing an arbitration panel's decision that the contract did not permit it to award fees. Parties, moreover, cannot expand § 11's narrow grounds for modification by adding the requested modification to a confirmation application. *See Hall Street*, 552 U.S. at 583–84. "[F]or a district court to include an additional award of attorneys' fees would 'judicialize' the arbitration process and constitute an unauthorized modification of the arbitrators' award" under the Act. *Menke*, 17 F.3d at 1009 (discussing *Schlobohm v. Pepperidge Farm, Inc.*, 806 F.2d 578 (5th Cir. 1986)).

Bay Shore's request for its arbitration-incurred attorney's fees also conflicts with the Agreement. The Agreement leaves no room for the independent judicial inquiry over its meaning that Bay Shore asks of us here. It unambiguously states: "*Any dispute* arising under this Agreement shall be resolved in accordance with the Dispute Resolution Procedures." Agreement, R.7-1, PageID#50 (emphasis added). Those procedures indicate that if the parties cannot settle their contract dispute themselves, "such Dispute *shall* then be settled by arbitration." *Id.*, PageID#56 (emphasis added). And the procedures indicate that "[a]ny decision

rendered by the arbitrators pursuant to any arbitration shall be final and binding upon the parties hereto[.]" *Id.*, PageID#57. Yet Bay Shore now asks us to review the Agreement de novo and conclude that, while its conflicting provisions do not permit *arbitrators* to award attorney's fees, they do permit *courts* to do so. Oxbow disagrees and offers a competing view. But the Agreement itself says who should resolve this dispute about the meaning of these conflicting attorney's fees provisions—the arbitrators. And the arbitration panel's opinion nowhere authorizes the courts to award the fees that it denied.

To be sure, the Agreement noted that a party to the arbitration could "appeal" to a court "on the basis that the panel has made a mistake of law or the panel's finding or award is against the weight of evidence or is beyond the power or jurisdiction of the panel." Agreement, R.7-1, PageID#58. But both parties agree that this provision, like the similar provision in *Hall Street*, conflicts with the Federal Arbitration Act's narrow grounds for judicial review of arbitration awards. *See* 552 U.S. at 583–84. Bay Shore thus cannot rely on it here. *Id.*

Substantial precedent confirms my reading of the Act and the Agreement. Start with *Schlobohm*. There, the Fifth Circuit asked whether a district court correctly awarded the attorney's fees that the prevailing party incurred during the confirmation process (not, as here, during the arbitration). 806 F.2d at 580. The losing party had argued "that the district court sat solely to confirm the arbitration award and that under the Federal Arbitration Act the district court could modify or correct the award only under certain narrow circumstances, none of which are present here." *Id.* The court disagreed with this argument because the parties' arbitration agreement submitted only one narrow issue to the arbitrators. *Id.* at 581. Yet the court noted that this argument would have merit when parties agreed to arbitrate *all* disputes: "If, as is often the case, the arbitration agreement had provided that 'any dispute arising from the contract' would be submitted to arbitration, a strong case could be made that any award of attorney's fees . . . was necessarily submitted to the arbitrators and a district court that made such an award would be impermissibly modifying the arbitrators' decision." *Id.* That is how the parties' agreement reads in this case. And that is what Bay Shore asks us to do—modify the arbitrators' award by adding attorney's fees to it.

Our court has agreed with *Schlobohm*'s reasoning since. *See Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 610 F. App'x 464, 467–70 (6th Cir. 2015). In *Crossville*, we rejected a party's request for the district court to award attorney's fees incurred during the confirmation process. *See id.* The relevant contract had "the precise language that the Fifth Circuit in *Schlobohm* suggested would preclude a court from adjudicating the issue of post-arbitration attorneys' fees." *Id.* at 469. Like the Agreement in this case, the contract in *Crossville* stated that the parties would resolve any dispute through arbitration. *Id.* We found this "any dispute" language broad enough to encompass the attorney's fees issue that the prevailing party had raised in the district court. *Id.* at 469–70. And the prevailing party there (like Bay Shore here) "did submit the issue of attorneys' fees to arbitration"—showing that this party recognized that the attorney's fees dispute was for the arbitrators, not the courts, under the contract's broad language. *Id.* at 470.

Many other courts have reached similar conclusions. If a contract includes a broad arbitration clause covering "any dispute," courts refuse to award attorney's fees in confirmation proceedings. *See Menke*, 17 F.3d at 1009–10; *Davison Design & Dev., Inc. v. Frison*, 2019 WL 1745787, at *2–3 (W.D. Pa. Apr. 18, 2019); *Bd. of Trs. of the Mun. Elec. Util. of the City of Cedar Falls v. Miron Constr. Co.*, 2014 WL 1464858, at *8 (N.D. Iowa Apr. 15, 2014); *Sullivan v. Lumber Liquidators, Inc.*, 2013 WL 4049102, at *4 (D. Nev. Aug. 9, 2013); *Hannibal Pictures v. Les Films de l'Elysee*, 2012 WL 6608595, at *3 (C.D. Cal. Dec. 18, 2012); *Own Capital, LLC v. Celebrity Suzuki of Rock Hill, LLC*, 2011 WL 3300696, at *1–3 (E.D. Mich. Aug. 2, 2011); *cf. Altruist, LLC v. Medex Patient Transp., LLC*, 308 F. Supp. 3d 943, 946, 952–53 (M.D. Tenn. 2018).

C

My colleagues conclude that, like the contract in *Schlobohm*, the Agreement "specifically excluded the issue of attorneys' fees from the list of arbitrable issues." Maj. Op. 6. It unambiguously does not. The Agreement sends "any dispute arising under the Agreement" to arbitration. Agreement, R.7-1, PageID#50. The parties now dispute whether the Agreement allows courts to award the attorney's fees incurred during arbitration. They thus are engaged in a "dispute" that "aris[es] under the Agreement." So the Agreement's plain terms reserve this

dispute's resolution for the arbitrators.  My colleagues respond by pointing to the Agreement's provisions authorizing an award of attorney's fees.  But their reliance on these provisions assumes the conclusion to the debate: Does the Agreement authorize attorney's fees despite its conflicting provisions?  The attorney's fees provisions say nothing about the *procedure* for resolving that dispute about the Agreement.  Instead, the default rule should apply here—that the arbitrators must resolve it.

Bay Shore, by comparison, argues that we may consider this question de novo because of the arbitration panel's use of the word "jurisdiction" when denying attorney's fees.  This language, Bay Shore argues, shows that the panel did not adjudicate the *merits* by rejecting Bay Shore's interpretation over how to reconcile the conflicting attorney's fees provisions.  Instead, Bay Shore claims, the panel found that it lacked the power to reach the merits of this attorney's fees question and reserved it for the courts.  Bay Shore is correct that parties who "agree to arbitrate" may "exclud[e] certain claims from the scope of their arbitration agreement."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).  But the arbitration panel nowhere interprets the Agreement to exclude from arbitration the parties' "specific dispute" about the meaning of these conflicting attorney's fees provisions.  *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (citation omitted).  That would have been surprising.  As noted, the Agreement nowhere carves out disputes over attorney's fees from arbitration.  And "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" even when the "problem at hand is the construction of the contract language itself[.]"  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  Thus, neither party even suggested that the arbitrators lacked the authority to resolve this attorney's fees issue.  *Cf. BP Am. Prod. Co. v. Chesapeake Expl., LLC*, 747 F.3d 1253, 1260 (10th Cir. 2014).  Instead, both sides requested their attorney's fees if the arbitrators found them consistent with the Agreement.

I read the arbitration panel's opinion differently.  The panel did not say it lacked jurisdiction *to resolve this dispute* about the meaning of the conflicting attorney's fees provisions.  It, in fact, addressed that dispute by holding that it lacked jurisdiction "*to award attorneys' fees* to the prevailing party."  Final Award, R.7-4, PageID#99 (emphasis added).  The

panel recognized that the Agreement contained "ambiguous and contradictory language," but found that "one section of the [Agreement] on its face contains language that prohibits the award of attorneys' fees by an arbitration panel." *Id.*, PageID#98. The panel thus engaged in interpretation, not reservation. And it treated the provision barring attorney's fees as controlling. Despite its use of jurisdictional language, therefore, the opinion plainly reached the merits of this contract dispute and resolved the dispute against Bay Shore by denying attorney's fees. *Cf. Arbaugh v. Y & H*, 546 U.S. 500, 510–11 (2006); *V Cars, LLC v. Chery Auto. Co.*, 603 F. App'x 453, 457 (6th Cir. 2015).

Even if true, Bay Shore responds, the arbitration panel read the Agreement to bar only the *arbitrators* from awarding arbitration-related attorney's fees, while permitting the *courts* to award fees later. I agree that the panel indicated only that the Agreement barred the arbitrators from awarding fees. But the panel nowhere added that, despite the conflicting attorney's fees provisions, the Agreement allowed courts to award the arbitration-related fees that the panel refused to provide. If the panel had meant to hold that courts could add arbitration-related attorney's fees to its award, it would not have ended its opinion with the following statement: "This Award resolves *all* claims between the parties presented in the Demand, Counterclaim, or other pleadings and/or at the Hearing. Any claim not specifically granted is hereby denied." Final Award, R.7-4, PageID#109 (emphasis added). This broad language covers Bay Shore's claim for fees and does not dismiss the claim without prejudice. The broad language also does not include any disclaimer that courts may later award fees. That is why, aside from arguing over whether we may even review this issue, Bay Shore asks us to review the Agreement de novo. It does not ask us merely to enforce the panel's prior interpretation of the Agreement. Yet the meaning of the Agreement was for the arbitrators. And they did not resolve this issue in favor of Bay Shore.

II

Even if I agreed that we could engage in a de novo review of the Agreement, I could not find that it unambiguously authorizes arbitration-related attorney's fees to the prevailing party. Its terms leave me puzzled whether the parties intended to provide for the shifting of attorney's fees incurred during the arbitration. So I would remand for proceedings to resolve that puzzle.

The contract states (and the parties agree) that Ohio law governs its meaning. Under Ohio law, courts "examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). When deciphering the parties' intent, we give the contract's words their "plain and ordinary meaning." *Laboy v. Grange Indem. Ins. Co.*, 41 N.E.3d 1224, 1227 (Ohio 2015). If, however, the "contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). And it is "the role of the finder of fact to resolve ambiguity." *Id.* at 1262.

The conflicting attorney's fees provisions render this Agreement ambiguous. Subsection (b)(iv) of the Dispute Resolution Procedures gives the arbitrators discretion to award costs, but "exclud[es] attorneys' fees which shall be borne by each party individually." Subsection (b)(v) then says the prevailing party "shall be reimbursed by the other party for all costs," including "reasonable attorneys' fees[.]" I agree with the district court that these clauses seem irreconcilable on their face, and I would find that their irreconcilability creates an ambiguity for the fact finder to resolve.

To reconcile the provisions, Bay Shore interprets Subsection (b)(iv) as preventing only the *arbitrators* from awarding attorney's fees, and it interprets Subsection (b)(v) as requiring a *court* to do so. But its reading does not strike me as the *only* plausible way to reconcile these seemingly conflicting provisions. It is perhaps more plausible that, as Bay Shore suggested before the arbitrators, one of the provisions is a "scrivener's error." *Cf.* 7 Corbin on Contracts § 28.45, Lexis (database updated 2020). Extrinsic evidence could bear this out. It is also plausible that the parties meant to prohibit the recovery of *arbitration-incurred* attorney's fees, but to allow the recovery of *court-incurred* attorney's fees. After all, Subsection (b)(v) comes immediately after the provisions in Subsection (b)(iv) detailing court proceedings. To be sure, this reading is not without problems. Most notably, Subsection (b)(v) says that "the prevailing party in *any arbitration* or court proceeding" should recover its fees. But the Agreement might have included this "any arbitration" language to make clear that attorney's fees were recoverable in a confirmation proceeding in which the party who already prevailed in the arbitration merely sought to confirm the award in a court.

And Bay Shore's reading has its own problems.  To start, it relies on the attorney's fees language in Section 15.7 of the Agreement.  But, as the arbitration panel found, this section does not apply to disputes (like this one) that flow through the "Dispute Resolution Procedures" identified in Section 15.6.  Those procedures outline a robust process for resolving disputes and nowhere mention Section 15.7.  Likewise, Section 15.7 nowhere mentions arbitration.

Next, Bay Shore's attempted harmonization of Subsections (b)(iv) and (b)(v) does not fit the text.  By holding that (b)(v) applies to fees incurred during arbitration, Bay Shore reads out two clauses of Subsection (b)(iv).  We must either excise Subsection (b)(iv)'s categorical phrase that attorney's fees "shall be borne by each party individually" or include the implied word "temporarily" in that phrase.  In addition, Subsection (b)(iv) grants the arbitration panel *discretion* to assess other arbitration costs against "any party as the panel shall determine." Subsection (b)(v), by contrast, *requires* the reimbursement of "all costs, expenses and charges" incurred by the prevailing party.  It would make no sense to give the arbitrators the discretion to deny these arbitration costs, only to then compel a court to provide the costs anyway.

All of this said, I do not mean to suggests that Bay Shore's reading is wrong.  But it is not unambiguously right.  In these circumstances, the resolution of the Agreement's ambiguity is a matter for the trier of fact after discovery and a trial.  That conclusion only reiterates my view that the Federal Arbitration Act should prohibit Bay Shore's requested relief because the proper resolution of this dispute entails the "cumbersome and time-consuming judicial review process" that the Supreme Court sought to avoid.  *Hall Street*, 552 U.S. at 588 (citation omitted).

* * *

In short, Bay Shore's request for attorney's fees conflicts with the Federal Arbitration Act and with the parties' decision to resolve all disputes through arbitration.  I thus would affirm.  At the least, I would remand for further proceedings to decide the ambiguous Agreement's meaning. For both reasons, I respectfully dissent.